CPC INTERNATIONAL, INC., Plaintiff,

v.

BLANDITO FOOD DISTRIBUTING CORP., Windsor Wholesale Corp., Food Value Supermarket, Varaderos Supermarket, Inc., and Tropical Supermarket, Inc., Defendants.

No. 93–0540–CIV.

United States District Court, S.D. Florida.

April 28, 1993.

Steven I. Peretz, and Terri Tuchman, Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL, for defendant Windsor Wholesale Corp.

Leslie J. Lott, and Sarah A. Keefe, Leslie J. Lott & Associates, P.A., Coral Gables, FL, for defendants Varaderos Supermarket, Inc. and Tropical Supermarket, Inc.

George T. Pallas, Miami, FL, for defendant Food Value Supermarket.

Douglas R. Bush, Ellen A. Efros, and William M. Webner, Vorys, Sater, Seymour & Pease, Washington, DC, Brian F. Spector, Kenny, Nachwalter, Seymour, Arnold & Critchlow, P.A., Miami, FL, for plaintiff.

## ORDER DENYING CPC INTERNATIONAL, INC.'S MOTION FOR PRELIMINARY INJUNCTION

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon Plaintiff CPC International, Inc.'s ("CPC") Motion for Preliminary Injunction, filed March 18, 1993.

### EVIDENTIARY FINDINGS

CPC is a corporation engaged in the manufacture and distribution of consumer food products, including Mazola corn oil ("Mazola"). CPC is also the owner of title and interest in the Mazola trademark in the United States. CPC manufactures Mazola in the continental United States at manufacturing plants in New Jersey and Illinois ("continental Mazola"). CPC also manufactures Mazola in Puerto Rico ("Puerto Rican Mazola"). The actual corn oil manufactured at the New Jersey and Illinois factories and placed in containers for distribution and sale as continental Mazola contains the same ingredients as the Mazola manufactured in Puerto Rico for sale and distribution as Puerto Rican Mazola.

In the continental United States, CPC does not manufacture a 96 oz. Mazola container. CPC only distributes Mazola in six different container sizes: 16 oz., 24 oz., 32 oz., 48 oz., 64 oz., and 128 oz. In Puerto Rico, however, CPC distributes Mazola in seven different sizes: 16 oz., 24 oz., 32 oz., 48 oz., 64 oz., *96 oz.*, and 128 oz. In Puerto Rico, CPC affixes only one label to the 96 oz. Mazola container. That label, printed in Spanish, is located on the front panel of the

container. By contrast, each of the containers of continental Mazola contain labels that are printed in English and are affixed to both the front and rear panels of the containers.

Defendants Blandito Food Distributing Corp. ("Blandito") and Windsor Wholesale Corp. ("Windsor") purchase Puerto Rican Mazola from sources in Puerto Rico and ship the Mazola to a warehouse in Florida. English-language labels are then attached to the rear of the containers of Puerto Rican Mazola to comply with federal regulations, and the Puerto Rican Mazola is distributed and sold to the defendant Hispanic grocery stores in South Florida. The English-language labels attached to the rear of the Puerto Rican containers are essentially mirror images of the Spanish-language labels located on the front of the containers. Each label clearly states that the product is Mazola corn oil manufactured by CPC in Puerto Rico.

On March 18, 1993, CPC filed a motion for preliminary injunction asking the Court to enter a preliminary injunction prohibiting each defendant from using the Mazola trademark on labels that they affix to containers of corn oil, prohibiting the defendants from passing off 96 oz. containers of Mazola as 128 oz. containers of Mazola, and awarding CPC damages and the profits gained by the defendants. On April 19, 1993, this Court held a hearing on CPC's motion for preliminary injunction. At the conclusion of the hearing, CPC and the various defendants were given several days to file any additional materials that they wished to be considered by the Court before the Court issued a decision on the plaintiff's motion.

## DISCUSSION

This case involves the distribution and sale of genuine Mazola corn oil, in genuine Mazola containers, bearing a genuine Mazola label on the front panel and an added English-language label on the rear panel, to Hispanic consumers in South Florida. CPC, the owner of the Mazola trademark, requests that the Court enter a preliminary injunction against the defendants. In order for CPC to prevail on its motion for preliminary injunction, CPC must demonstrate the following four elements: (1) a substantial likelihood

that CPC will prevail on the merits; (2) a substantial threat that CPC will suffer irreparable injury if injunctive relief is not granted; (3) the threatened injury to CPC outweighs the threatened harm an injunction may do to the defendants; and (4) the granting of the preliminary injunction is in the public interest. *Tally–Ho, Inc. v. Coast Community College District,* 889 F.2d 1018 (11th Cir.1989); *Parfums Stern, Inc. v. United States Customs Service,* 575 F.Supp. 416, 419 (S.D.Fla.1983). "The moving party has the burden of proving each of these elements." *Bell & Howell v. Masel Supply,* 719 F.2d 42, 45 (2nd Cir.1983).

After careful consideration of the evidence presented at the hearing, the motions and memoranda of the parties, and the documents and depositions presented by the parties, the Court concludes that CPC has failed to carry its burden of demonstrating each of the elements of the preliminary injunction test. Specifically, CPC has failed to show a substantial likelihood of success, failed to demonstrate a substantial threat of irreparable injury, failed to show that the threatened injury to CPC outweighs the injury to defendants if a preliminary injunction is issued, and failed to explain how the granting of the preliminary injunction is in the public interest.

CPC provides the Court with a recital of case law to support its claim that the addition of an English-language label to the rear of the Puerto Rican Mazola containers is a significant, material change in the product that is likely to confuse or deceive the consumer. *See Pepsico, Inc. v. Giraud,* 7 U.S.P.Q.2d 1371, 1373, 1988 WL 391511 (D.P.R.1988). The case law presented by CPC, however, is readily distinguishable from this case. For instance, CPC cites *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.,* 816 F.2d 68 (2nd Cir.1987), for the proposition that a genuine product manufactured in another country using Spanish-language accessories is an infringement of American trademark laws. In *Original Appalachian,* however, the court found that the Cabbage Patch Kid "adoption papers" were an important element of the mystique of the product. *Id.* In addition, the court noted that the

plaintiff had received a significant number of consumer complaints about the Spanish-language product. *Id.* at 70–71. At no point in this cause of action has CPC presented any credible evidence that consumers have been confused or misled by the labeling or the packaging of the Puerto Rican Mazola containers. In addition, the "exhaustion doctrine" principles espoused by the Court in *Original Appalachian* clearly applies with more force in international cases, such as *Original Appalachian,* than in domestic cases. *Id.* at 76.

In a similar vein, CPC argues that the Puerto Rican Mazola containers are materially different from the continental Mazola containers because the Puerto Rican Mazola does not pass through the same quality control system as the continental Mazola. CPC presented no evidence, however, to suggest that the defendants have ever opened the Puerto Rican Mazola containers. In fact, the defendants simply open the shipping cartons, add an English-language label, and ship the cartons to local grocery stores.

Once again, this situation is quite different from the case cited by CPC in support of its argument, *El Greco Leather Products Co. v. Shoe World,* 806 F.2d 392, 395 (2nd Cir.1986). In *El Greco,* the defendant refused to allow the plaintiff to apply its routine quality control inspection to a batch of shoes that may not have met the quality standards of the plaintiff. In this case, however, there is no doubt that the corn oil sold in the Puerto Rican Mazola containers is identical to the corn oil sold in the continental Mazola containers, and there is no evidence that CPC ever inspects containers of continental Mazola or Puerto Rican Mazola after they leave CPC's manufacturing plant.

CPC also failed to show that a preliminary injunction would be in the public interest. At the hearing and in the motion for preliminary injunction, CPC argued that customers who do not read Spanish are harmed by the labeling on the 96 oz. Puerto Rican Mazola containers. According to CPC, this harm arises because the English-language translation on the rear of the Puerto Rican Mazola containers contains a slightly different safety warning then the warning on the Spanish-language label located on the front of the container. CPC fails to explain, however, how customers at Hispanic grocery stores who do not read English are currently able to comprehend the safety instructions on the continental Mazola containers. The labels on the continental Mazola containers, of course, are only printed in English. Clearly, the Hispanic community that frequents the defendant supermarkets benefits greatly from the availability of a dual-language Mazola container. In addition, the popularity of the 96 oz. Puerto Rican Mazola container strongly suggests that this container possesses other inherent benefits that do not accompany the continental Mazola containers, including a lower price and a more convenient size.

## CONCLUSION

The labels added to the rear panel of the 96 oz. Puerto Rican Mazola containers do not create a false impression about the source or quality of the product. In fact, they are virtually exact translations of the labels that CPC places on the front of the Puerto Rican Mazola containers. While the Court cannot draw any conclusions about the eventual outcome of this matter, the Court concludes that at this time, CPC has failed to carry the heavy burden of satisfying each of the elements in the preliminary injunction standard.

Consequently, it is hereby,

ORDERED AND ADJUDGED that CPC's Motion for Preliminary Injunction is DENIED.

DONE AND ORDERED.